**REVERSE and REMAND; Opinion issued February 7, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-00967-CV

## QUI PHUOC HO AND TONG HO, Appellants

## V.

## MACARTHUR RANCH, LLC, Appellee

### On Appeal from the 14th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 09-05369-A

# OPINION

Before Justices O'Neill, Francis, and Murphy
Opinion By Justice Murphy

Qui Phuoc Ho and Tong Ho appeal the trial court's judgment in favor of MacArthur Ranch, LLC on its fraudulent transfer claims under the Texas Uniform Fraudulent Transfer Act. *See* TEX. BUS. & COM. CODE ANN. §§ 24.001–.013 (West 2009) (TUFTA). Appellants complain in three issues about the legal and factual sufficiency of the evidence, the finding of joint and several liability for the full amount of the debt, and the failure to join Mau Thi Nguyen as a necessary party. We reverse and remand the case for a new trial.

## BACKGROUND

Toan Ho and his wife, Nhung Truong, leased commercial space from MacArthur Ranch for a nail salon. After the couple became delinquent on their rent, MacArthur Ranch sued for breach

of contract. Just before a summary judgment hearing in that case, the couple conveyed their ownership interests in two different properties to their relatives. Specifically, thirteen days before the summary judgment hearing, Toan Ho deeded his interest in a house located at 1715 Princess Place in Arlington, Texas—the Princess house—to his parents, Qui Phuoc Ho (one of the appellants) and Mau Thi Nguyen. The day before the summary judgment hearing, the couple deeded their interest in a second house—the Clint house—to Toan Ho's brother, Tong Ho (the other appellant). The trial court granted summary judgment for MacArthur Ranch against Toan Ho and Nhung Truong (debtors) for $150,000 plus attorney's fees.

When MacArthur Ranch learned about the transfer of the Princess and Clint houses, it filed a fraudulent transfer suit against appellants and debtors. MacArthur subsequently nonsuited debtors due to their bankruptcy, leaving only appellants as party defendants in the trial court.

The case was tried in a one-day bench trial in which MacArthur Ranch presented two witnesses—its property manager and its attorney—and both appellants testified. The evidence also included deemed admissions by both appellants. The trial court concluded the conveyances of the two houses were fraudulent transfers under TUFTA and rendered judgment against appellants jointly and severally in the amount of $180,171, enjoined appellants from disposing of or allowing any encumbrance against the properties, ordered that MacArthur Ranch could levy execution on the houses, and ordered the sheriff to post both houses for sale and transmit the net proceeds to MacArthur Ranch to be applied against the judgment. This appeal followed.

## DISCUSSION

Appellants' first two issues require a sufficiency review. Appellants claim in their first issue

that MacArthur Ranch's evidence was factually and legally insufficient to prove fraudulent transfers under TUFTA.[1] In their second issue, they contend the trial court erred in granting a joint and several judgment against them for the full amount of the debt, arguing in part that MacArthur Ranch offered no evidence or insufficient evidence to prove fair market value of the properties at the time of the transfer.

## Standard of Review

Appellants, as the parties challenging the legal sufficiency of the evidence on a matter for which they did not bear the burden of proof, must demonstrate on appeal there is no evidence to support the trial court's adverse findings. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a no-evidence point, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in support. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Appellant's legal sufficiency challenge fails if there is more than a scintilla of evidence to support the judgment. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). More than a scintilla of evidence exists when the evidence is such that reasonable and fair minded people could differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Evidence that does no more than create a mere surmise or suspicion is insufficient to rise to the level of a scintilla. *Id.*; *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

To evaluate appellants' factual sufficiency challenges, we must consider and weigh all of the evidence; the judgment can be set aside only if the evidence is so weak or if the trial court's finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.

---

[1] Although not a sufficiency issue, they also assert in their first issue that the award of attorney's fees against them is not equitable and just under the circumstances.

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We may not substitute our judgment for that of the trial court, as fact finder, and should remain cognizant that the trial court was the sole judge of witness credibility. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## TUFTA

The trial court concluded the transfers of both the Princess house and the Clint house violated two provisions of TUFTA—subsection 24.005(a)(1) and section 24.006. Subsection 24.005(a)(1) provides that a transfer made or obligation incurred by a debtor is fraudulent as to a creditor if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor. TEX. BUS. & COM. CODE ANN. § 24.005(a)(1). Actual intent to defraud creditors ordinarily is a fact question. *Walker v. Anderson*, 232 S.W.3d 899, 914 (Tex. App.—Dallas 2007, no pet.). Circumstantial proof may be used to prove fraudulent intent because direct proof is often unavailable. *See Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 454 (Tex. App.—Dallas 2012, pet. denied). Facts and circumstances that may be considered in determining fraudulent intent include a non-exclusive list of "badges of fraud" prescribed by the legislature in section 24.005(b). Those include, for example, transfer to an insider, suit or threatened suit against the debtor before the transfer, transfer of substantially all of the debtor's assets, debtor's insolvency at the time of transfer or shortly afterwards, concealment of the transfer, and whether the consideration the debtor received was reasonably equivalent to the asset transferred. *See* TEX. BUS. & COM. CODE ANN. § 24.005(b). The presence of several of these factors is sufficient to support a fact finder's reasonable inference of fraudulent intent. *See Mladenka v. Mladenka*, 130 S.W.3d 397,

405 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The trial court also found fraudulent transfers under section 24.006. That section provides that a debtor's transfer is fraudulent as to a creditor whose claim arose before the transfer if the debtor did not receive a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or became insolvent as a result of the transfer. *See* TEX. BUS. & COM. CODE ANN. § 24.006. "Reasonably equivalent value" is defined as including a transfer that is within the range of values for which the transferor would have sold the asset in an arm's length transaction. *Id.* § 24.004.

Appellants challenge the legal and factual sufficiency of the evidence on the following elements of MacArthur Ranch's TUFTA claim: (1) that debtors were left insolvent as a result of the conveyances (section 24.006); (2) the fair market value of either property at the time of the transfer (section 24.006 and damages); (3) that the Princess and Clint houses constituted substantially all of debtors' assets (section 24.006); and (4) the transfers were made with actual intent to hinder, delay, or defraud MacArthur Ranch (subsection 24.005(a)(1)). They also argue there was no evidence as to the nature and extent of Toan Ho's interest in the Princess house at the time of transfer.

If the evidence supports a fraudulent transfer claim under either subsection 24.005(a)(1) or section 24.006, the court may affirm the trial court's judgment. *See Corpus v. Arriaga*, 294 S.W.3d 629, 637 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (determining transfer fraudulent under section 24.006 precluded court's reaching challenge under section 24.005). We first address appellants' evidentiary challenge to debtors' intent to hinder, delay, or defraud MacArthur Ranch because our analysis of this evidence disposes of the first issue.

The evidence consisted of testimony from MacArthur Ranch's property manager, Susan Gregory; its attorney, Kent Davenport; both appellants, as interpreted by debtor Toan Ho; and exhibits admitted by the trial court. The exhibits included both appellants' deemed admissions. Any matter admitted through those admissions was conclusively established as being true. *Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 838 (Tex. App.—Dallas 2009, no pet.); *see also* TEX. R. CIV. P. 198.2(c).

Appellant Qui Phuoc Ho's deemed admissions included the following: he is the father of Toan Ho (debtor); he and Toan Ho purchased the Princess house on or about October 9, 1991; Toan Ho conveyed all of his right, title, and interest in the Princess house to his father on or about January 31, 2008; he paid nothing for acquiring Toan Ho's right, title, and interest in the Princess house; at the time he acquired Toan Ho's title to the Princess house, he knew that MacArthur Ranch had asked for a judgment against Toan Ho and he knew a hearing had been scheduled regarding the judgment; he intended to acquire Toan Ho's title to the Princess house to delay MacArthur Ranch's collection of its judgment; he intended to acquire Toan Ho's title to hinder MacArthur Ranch's collection of its judgment and to defraud MacArthur Ranch; and he accepted title to the Princess house to help Toan Ho escape his responsibilities for MacArthur Ranch's judgment.

Similarly, appellant Tong Ho's deemed admissions included the following: Tong Ho is Toan Ho's brother; debtors conveyed to him all of their right, title, and interest in the Clint house by deed, which was recorded on February 11, 2008; he paid nothing for debtors' title to the Clint house; he intended to acquire debtors' title to the Clint house to delay MacArthur Ranch's collection of its judgment; he was aware MacArthur Ranch had requested a judgment against debtors and knew that

a hearing date had been scheduled regarding the lawsuit; he acquired debtors' title to the Clint house to hinder MacArthur Ranch's collection of its judgment; he intended to acquire debtors' title to the Clint house to defraud MacArthur Ranch; and he accepted title to the Clint house to help his brother escape his responsibilities for MacArthur Ranch's judgment.

Both Gregory and Davenport also testified that MacArthur Ranch had tried to collect on the judgment against debtors and had been unable to do so because the transfers of the Princess and Clint houses left them with no assets. Gregory testified further that nothing had been collected against the judgment.

Although appellants each testified through debtor Toan Ho as the interpretor, the testimony was brief and much of the testimony is unclear. Both appellants referenced "the house" in their testimony, but the house was never identified specifically. Appellant Qui Phuoc Ho testified that he came to the United States in 1989 and had to buy the house in debtor Toan Ho's name because appellant had no credit. He claimed he paid all the money for the house. Appellant Tong Ho testified about a house he bought in connection with a Fort Worth case that had been on the market "for a long time ago" for $80,000 and he offered the attorney in the Fort Worth case $70,000. He testified that no money "was from Toan Ho." At most, this testimony suggests Toan Ho never paid anything for his interest in one or both of the houses.

The testimony of Gregory and Davenport, together with the deemed admissions, provide proof of several factors that show debtors made the transfers with actual intent to hinder, delay, or defraud MacArthur Ranch. Specifically, both transfers were to insiders (debtor Toan Ho's father and brother), the transfers were just prior to the summary judgment hearing at which the trial court

rendered a $150,000 judgment against debtors, the transfers left debtors with no assets against which MacArthur Ranch could satisfy the judgment, debtors received nothing for the transfers, appellants knew about the pending judgment and accepted the transfers with the intent of hindering MacArthur Ranch's collection of its judgment, and appellants were attempting to help debtor Toan Ho escape his responsibilities for the judgment. *See* TEX. BUS. & COM. CODE ANN. § 24.005(b). Evidence of these factors is sufficient for a reasonable fact finder to infer debtors' fraudulent intent. *See Mladenka*, 130 S.W.3d at 405.

Appellants argue that evidence of transfer to an insider is but one factor to consider and the appellants' deemed admissions regarding their intentions are not relevant to debtors' intentions. While we agree that a transferee's awareness of the fraudulent nature of a transfer is not one of the elements of a subsection 24.005(a)(1) claim and that evidence of one "badge of fraud" is not conclusive, the evidence includes several factors relevant to MacArthur Ranch's claim. Appellants' deemed admissions also conclusively established several of those factors—that the transfers were made to insiders; with no payment or consideration; just before the substantial judgment was taken against debtors; and the purpose of the transfers was to hinder, delay, and defraud MacArthur Ranch. This conclusive evidence, which was not rebutted or contradicted, is legally and factually sufficient to support the trial court's finding of the requisite intent under subsection 24.005(a)(1). Accordingly, we overrule appellants' first issue regarding the legal and factual sufficiency of the evidence to support the trial court's finding under subsection 24.005(a)(1). We therefore do not address whether the evidence was legally sufficient to support a finding that the transfers were also fraudulent under section 24.006. *See Arriaga*, 294 S.W.3d at 637.

## Joint and Several Liability

Appellants state in their second issue that the trial court erred in granting a joint and several judgment against them for the full amount of the debt. Specifically, they contend any judgment against a specific transferee must be based on the value of the asset transferred to him—not the combined value of two transfers. The parties agreed at oral submission that the judgment for joint and several liability should be reversed on this basis. Appellants also challenge the legal and factual sufficiency of the evidence regarding the fair market value of the properties. We therefore turn to this portion of appellants' second issue.

MacArthur Ranch relies on the testimony of Gregory to establish the fair market value of each property on the date of transfer—determined by the trial court to be $110,000 for the Princess house and $100,000 for the Clint House. Gregory testified that she is a property manager and her company provided third-party property management services to MacArthur Ranch. She testified that she authorized the summary-judgment motion in the underlying lawsuit against debtors, referenced them as her tenants, and identified the deeds transferring debtors' interests in the Princess and Clint houses just prior to the summary-judgment hearing. Her testimony, in its entirety, regarding the value of the houses followed:

> Q. [BY MACCARTHUR RANCH'S COUNSEL] Now, Ms. Gregory, with respect to the value of the Clint house back in -- at the time of the conveyance, in early 2008, do you understand that the -- that the appraised value of the house was 78,900 dollars?
>
> A. Yes.
>
> Q. Is it your belief and testimony that the fair market value of the house would be higher than that since the appraised values are typically lower than the fair market value?

A. Yes.

Q. Would your testimony on the fair market value of the Clint house at 2303 Clint Court be one hundred thousand dollars?

A. Yes.

Q. Back in January of 2008?

A. Yes, it was.

Q. And particularly on February the 6th, 2008, the date of the conveyance. Is that a "yes"?

A. Yes, yes.

Q. And then let me direct your attention to this other house at 1715 Princess Place in Arlington, Texas. On the house that's at 1715 Princess Place, was your recollection that the appraised value of the house back in January of 2008 was $95,300?

A. Yes.

Q. And is your testimony that the fair market value of the house back on the January 31st of 2008 date, the date of the conveyance would be $110,000?

A. Yes.

Q. Is it your testimony that the total appraised value of both houses back in -- at the times of the conveyance would be $210,000?

A. Yes.

Q. Would that be the fair market value?

A. Yes.

Appellants argue this testimony is nothing more than unsupported speculation and should be disregarded. Specifically, they emphasize that counsel asked no questions attempting to establish Gregory's qualifications to opine about the value of real property in Tarrant County in 2008 and the

foundation for her opinion of fair market value "was non-existent." MacArthur Ranch responds that appellants waived their arguments because they failed to object before trial or when the evidence was offered. *See Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002) ("To preserve a complaint that an expert's testimony is unreliable, a party must object to the testimony before trial or when it is offered.").

Appellants assume in their argument that Gregory testified as an expert under rule 702 of the Texas Rules of Evidence. *See* TEX. R. EVID. 702 (providing that witness qualified as by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise). MacArthur Ranch responds by standing on its waiver argument and does not address the merits of appellants' argument. Neither the testimony nor the trial court's findings and conclusions suggest Gregory testified as a lay witness under rule 701, and we therefore address the issue as presented. *See* TEX. R. EVID. 701 (providing that witness's testimony limited to opinions or inferences rationally based on perception of witness if not testifying as expert).

Replying to MacArthur Ranch's waiver argument, appellants rely on *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227 (Tex. 2004), arguing that no objection was necessary to preserve its complaint that Gregory's conclusory statements cannot support the judgment. In *Coastal*, the Texas Supreme Court drew a distinction between challenges to an expert's methodology, technique, or foundational data and no-evidence challenges restricted to the face of the record, as follows:

> When the expert's underlying methodology is challenged, the court necessarily looks beyond what the expert said to evaluate the reliability of the expert's opinion . . . . When the testimony is challenged as conclusory or speculative and therefore non-probative on its face, however, there is no need to go beyond the face of the

record to test its reliability. We therefore conclude that when a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis. However, when the challenge is restricted to the face of the record—for example, when expert testimony is speculative or conclusory on its face—then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility.

*Id.* at 233 (internal quotations omitted). Accordingly, no objection was required at the time of admission of Gregory's testimony for appellants to challenge that testimony as speculative or conclusory on its face.

An expert's testimony is conclusory as a matter of law if the witness simply states a conclusion without an explanation or factual substantiation. *Natural Gas Pipeline Co. of Am. v. Justiss*, No. 10-0451, 2012 WL 6214635, at *5 (Tex. Dec. 14, 2012); *see also Coastal Transp. Co.*, 136 S.W.3d at 232. When a scientific opinion is admitted without objection, it may be considered probative evidence even if the basis for the opinion is unreliable. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009). But if no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection. *Id.* Stated differently, an expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of the statements to link the conclusions to the facts. *Id.*

Gregory responded to leading questions regarding an appraised value and a fair market value for both properties. Regarding appraised values, she responded "yes" to each question—that she "recollected" the appraised value of the Princess house was $95,300 back in January of 2008 and "understood" the appraised value of the Clint house was $78,900 dollars sometime in early 2008.

But the record is silent regarding where she derived these numbers. She provided nothing to show the houses were appraised, by whom, or the method of appraisal. Based on her testimony, it is not even clear if Gregory is referring to a property appraisal at all. An unspecified "appraised value"—without more—provided nothing on which the trial court could rely and will not support a verdict. *See, e.g., Justiss*, 2012 WL 6214635, at *7 (noting that "naked assertion of 'market value' is not enough" to support verdict). We conclude Gregory's testimony regarding the appraised value of the Clint and Princess houses is speculative and conclusory on its face, and as a result, is not legally valid evidence. *See Pollock*, 284 S.W.3d at 818.

Gregory also answered "yes" to counsel's leading questions regarding market value for the houses, never offering a basis or knowledge for the number counsel suggested. A witness, regardless of whether the person is testifying as a property owner or an expert witness, may not simply echo the phrase "market value" and state a number to substantiate the value claim. Instead the witness must provide the factual basis for the opinion. *See Justiss*, 2012 WL 6214635, at *7. Gregory's "yes" answer to counsel's estimated value is conclusory and purely speculative. *Id.* at *9 (concluding no evidence where landowners answered "yes" to question of whether numbers were based on market value but never explained basis for figures); *Royce Homes, L.P. v. Humphrey*, 244 S.W.3d 570, 579 (Tex. App.—Beaumont 2008, pet. denied) (concluding owner's testimony that flooding of home reduced value by $30,000 was speculative when owner conceded he calculated post-flood value by "pulling [it] out of the air."); *Lefton v. Griffith*, 136 S.W.3d 271, 277 (Tex. App.—San Antonio 2004, no pet.) (concluding owner's testimony that sale resulted in $60,000 loss was conclusory where owner failed to explain basis for figure).

MacArthur Ranch argues Gregory's testimony is sufficient to support the damages awarded. Citing this Court's decision in *Davis v. Berger*, 05-99-00318-CV, 2000 WL 38960 (Tex. App.—Dallas Jan. 20, 2000, no pet.) (not designated for publication), it asserts "the amount of evidence required for legal and factual sufficiency to uphold a TUFTA judgment [is] very small." In *Davis*, the witness was asked if a company transferred $117,000 to her commodities account, and she testified, "Yes. Well I don't know that it was exactly $117,000, the exact amount." *Id.* at *2. On redirect examination, the witness admitted that she testified at her deposition that she believed about $117,000 was originally transferred into her account. *Id.* This Court concluded the testimony was a scintilla of evidence of the asset's value, rejecting a no-evidence argument grounded on the lack of documentary evidence and the witness's inability to state the exact value. *Id.*

*Davis* not only is a non-published opinion, but it is distinguishable from the current case. In *Davis*, the witness was testifying regarding assets in her own commodities account, a fixed account. She was not offering an opinion, either as an expert or otherwise, regarding the fair market value of real property. *See Justiss*, 2012 WL 6214635, at *7 (concluding property owner testimony is functional equivalent of expert testimony and must be judged by same standards requiring factual basis on which opinion rests). Thus, the testimony in *Davis* was not judged under the *Coastal* rule that opinion testimony, whether by a property owner or an expert, that is conclusory or speculative will not support a judgment. *See id.* (citing *Coastal*, 136 S.W.3d at 233). Accordingly, *Davis* does not change our analysis or the conclusion that Gregory's testimony was insufficient as a matter of law to support the trial court's findings regarding the fair market value of the Princess and Clint houses. We therefore sustain appellants' second issue.

-14-

## Disposition

Remedies under TUFTA for a fraudulent transfer include (1) avoidance of the transfer to the extent necessary to satisfy the creditor's claim; (2) an attachment or other provisional remedy; (3) other equitable remedies such as injunctions and appointment of receivers; or (4) execution on the asset transferred or its proceeds. TEX. BUS. & COM. CODE ANN. § 24.008. Under section 24.009(b) of TUFTA, MacAurthur Ranch could alternatively recover judgment for the value of the asset transferred or the amount necessary to satisfy its claim, whichever is less. *Id.* § 24.009(b).

The trial court in this case ordered an injunction, ordered the sheriff to post both houses for sale, ordered that MacArthur Ranch could levy execution on both the Princess and Clint houses, and also rendered judgment for $180,171 against appellants jointly and severally. To assess damages under TUFTA, the trial court was required to compare two numbers: the value of the underlying judgment ($172,171 prior to additional attorney's fees) and the combined fair market value of the Clint and Princess houses ($210,000). The trial court assessed damages of $172,171, the lesser of the two numbers. *See id.* § 24.009(b). Yet the trial court's finding regarding the amount of damages recoverable was dependent in part on the fair market values of the Princess and Clint houses. Having concluded the evidence is legally insufficient regarding fair market value, we must consider the proper disposition of this appeal.

Appellants argue that "this case is so fraught with insufficiencies, errors and omissions, the only option is to reverse the trial court's judgment and render a take-nothing judgment." In the alternative, they ask us to reverse and remand the case for a new trial. At oral argument, MacArthur Ranch argued that if we find insufficient evidence regarding the value of the transferred assets, we

should reverse and remand, citing *Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V.*, 202 S.W.3d 250 (Tex. App.—Corpus Christi 2006, pet. denied).

Generally, we render judgment when a no evidence issue is sustained following a trial on the merits. *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex. 2007); *Downing v. Burns*, 348 S.W.3d 415, 427 (Tex. App.—Houston [14th Dist.] 2011, no pet.). But when there is evidence to support some damages it is not appropriate to render judgment. *Guevara*, 247 S.W.3d at 670. Here, we can determine the value of the underlying judgment, but we cannot determine the fair market value of the two properties fraudulently transferred. While there is no evidence of fair market value, that value is only part of the statutory equation for determining a money-damages judgment if that is the remedy awarded. The record also contains some evidence that the Princess and Clint houses have some value. Because some evidence supports damages, we should not render judgment and therefore must reverse that portion of the judgment. *See Guevara*, 247 S.W.3d at 670.

This case presents the unusual circumstance where the trial court had the option of choosing from various remedies allowed under sections 24.008 and 24.009. Only one of those options was a money judgment, which we have concluded must be set aside. Yet, where liability is contested, we are required to remand the entire proceeding for a new trial on both liability and damages. *See* TEX. R. APP. P. 44.1(b) (prohibiting separate trial solely on unliquidated damages when liability is contested). We therefore reverse the trial court's judgment and remand this case for a new trial. Based on this disposition, we do not address appellants' remaining issue in which they urge the trial court was required sua sponte to mandate joinder of Mau Thi Nguyen as a necessary party. TEX. R. APP. P. 47.1.

## CONCLUSION

Legally sufficient evidence supports the trial court's finding that appellants' transfer of the Princess and Clint houses violated TUFTA subsection 24.005(a)(1). The parties agree that the judgment for joint and several liability must be reversed because appellants' liability for any money judgment must be based on the value of the asset transferred to each of them. Because the evidence is legally insufficient to support the finding regarding the fair market value of the houses, we cannot reform the judgment regarding joint and several liability and must reverse that portion of the judgment. Further, because liability was contested, a new trial is required pursuant to Texas Rule of Appellate Procedure 44.1(b). Accordingly, we do not reach appellants' remaining issues. This case is reversed and remanded for a new trial.

_Mary Murphy_
MARY MURPHY
JUSTICE

110967F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

QUI PHUOC HO AND TONG HO,
Appellants

No. 05-11-00967-CV      V.

MACARTHUR RANCH, LLC, Appellee

Appeal from the 14th Judicial District Court
of Dallas County, Texas. (Tr.Ct.No. 09-
05369-A).
Opinion delivered by Justice Murphy,
Justices O'Neill and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for a new trial. It is **ORDERED** that appellants Qui Phuoc Ho and Tong Ho recover their costs of this appeal from appellee MacArthur Ranch, LLC.

Judgment entered February 7, 2013.

_____
MARY MURPHY
JUSTICE